**Ex parte Thomas Cullen DAVIS.**

**No. 53230.**

Court of Criminal Appeals of Texas.

Oct. 20, 1976.

Phil Burleson, Michael P. Gibson and Archibald C. McColl, Dallas, William R. Magnussen, Fort Worth, for appellant.

Tim C. Curry, Dist. Atty., Joe Shannon, Jr., Tolly Wilson, James G. Bennett, Howard Borg, Paul Gartner and Marvin Collins, Asst. Dist. Attys., Fort Worth, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a habeas corpus proceeding instituted to secure bail for appellant in two capital murder cases.

Appellant was indicted for the capital murders of Stanford Farr (trial court cause 8028) and Andrea Wilborn (trial court cause 8029). The indictments allege murder in

the course of burglary and attempted burglary. V.T.C.A., Penal Code Sec. 19.-03(a)(2). He challenges the denial of bail in Cause 8029 and the amount, as excessive, in Cause 8028.

We shall first consider the denial of bail in Cause 8029. We will avoid a complete discussion of the facts since the case has not been tried on the merits.

Appellant's first ground of error attacks the capital murder charges by asserting that the burglary upon which they were based was not and could not have been committed by him. Several arguments are presented separately to support this ground. These arguments may be characterized as (1) a challenge to the ownership of the burglarized premises, alleged to be in Priscilla Davis, the wife of appellant; (2) an assertion that consent to enter was given by Ken Davis, brother of appellant, or Andrea Wilborn, deceased; (3) an attack on the statutory definition of owner; (4) an assertion that this prosecution is a "wanton and freakish" application of the law; (5) a claim of defects in the indictment for disjunctive pleading of ownership and failure to negative implied exceptions; and (6) invocation of the felony merger doctrine as a bar to this prosecution for capital murder.

The relevant evidence on these issues, briefly summarized, is as follows. The State presented evidence that on the night of August 2–3, 1976, appellant entered a residence in Fort Worth where he shot and killed Andrea Wilborn and Stanford Farr, and shot and wounded Priscilla Davis, wife of appellant and mother of Andrea, and also shot Gus Garvel. Title to the property and residence where these events occurred was shown to be held by appellant, his brother Ken Davis, and a trust. Approximately two years before these events, by a temporary order still in force on August 2–3, 1976, in a divorce suit still pending at the hearing on bail, Priscilla Davis was given exclusive possession of the residence and appellant was ordered to stay away from the premises.

The statutory definitions of burglary and owner are needed to consider appellant's contentions. V.T.C.A. Penal Code Sec. 30.-02(a) provides:

"A person commits an offense if, without the effective consent of the owner, he:

(1) enters a habitation, or building (or any portion of a building) not then open to the public, with intent to commit a felony or theft; or

(2) remains concealed, with intent to commit a felony or theft, in a building or habitation; or

(3) enters a building or habitation and commits or attempts to commit a felony or theft."

V.T.C.A. Penal Code Sec. 1.07(a)(24) provides:

" 'Owner' means a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor."

■ Appellant insists that burglary was not committed because he had the consent of one of the co-owners, Ken Davis, to enter the house. Ownership, as we have held in the past, does not merely involve the title interest to property. *Gilbreath v. State,* 158 Tex.Cr.R. 616, 259 S.W.2d 223; *Black v. State,* Tex.Cr.App., 505 S.W.2d 821. The Legislature, through its definition of "owner" in the Penal Code, has adhered to this principle.

■■ Although appellant and his brother had title interest in the property, the fact that Priscilla Davis had exclusive right of possession, at least as against appellant, defeats appellant's claim to an ownership capacity to grant consent to enter. Furthermore, the fact that Ken Davis was not a party to the civil proceeding wherein Priscilla Davis was granted exclusive possession of the residence does not empower him to give appellant effective consent to enter the premises declared off limits for appellant by the civil court's order.[1] If it did,

---

1. Appellant bases his right to enter the residence on the consent given to him by Ken

Davis. This consent was given at the time the house was constructed, years prior to the in-

the power and authority of the civil court which imposed the equitable order could be circumvented extrajudicially. We do not think any court would permit an injunction to be invalidated in this injudicious manner.

■ The injunction gave Mrs. Davis not only a "greater right to possession," it gave her exclusive possession of the residence. All rights to enter the house held by appellant were negated by the order of the court.

■ Appellant also contends that circumstantial evidence shows that Andrea Wilborn allowed him to enter the house. The circumstantial evidence consists of the fact that there were no signs of a forcible entry at the residence. Even if she voluntarily admitted appellant, there is nothing in the record to suggest that such act by the twelve year-old girl was *effective* consent (see V.T.C.A. Penal Code Sec. 1.07(a)(12)) to enter, or that appellant was operating under some mistake of fact (see V.T.C.A. Penal Code Sec. 8.02) regarding this matter.

■ Appellant also challenges the constitutionality of the definition of "owner" in Sec. 1.07(a)(24), supra. The decision in *Sheppard v. Giebel,* Tex.Civ.App., 110 S.W.2d 166, as cited as authority for this contention.

Suit was brought in that case to enjoin the collection of taxes on electric phonographs operated by the use of coins and to enjoin criminal prosecutions for failure to pay such taxes. The statute defining "owner" for purposes of taxation and penalties was held unconstitutional because it defined owner in a highly indefinite manner.

The issue regarding the definition of "owner" in the case at bar is significantly different from that in the *Sheppard* decision. There, whether one was an owner or not determined tax liability and possible criminal liability. Here, the issue of ownership goes to the scope of interests protected by the law, not the imposition of liability.

The disjunctive definition to establish tax liability is vague. The disjunctive definition of interests protected is not vague. That is in the nature and structure of the English language.

We do not find the definition of "owner" provided by the Penal Code to be unconstitutionally vague. The Legislature recognized the concept that there are many types of possessory interest in property besides ownership in title. Such a concept has followed the development of Anglo-American civil and criminal jurisprudence.

■ The definition provided by the Penal Code is designed to protect all ownership interests in property from criminal behavior. In the instant case, Mrs. Davis had a greater right to possession of property than the appellant. "Owner" was defined by the Legislature to protect those persons who have a greater right to possession of the property than the criminal actor. We conclude that the definition is sufficiently precise to withstand constitutional challenge.

■ Davis argues that the charge of capital murder under the facts of this case represents an unconstitutional "wanton and freakish" application of the capital murder statute. See, *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed. 346. The infrequency of the commission of an offense does not prevent its prosecution. The "wanton and freakish" commission of an offense does not render its punishment "wanton and freakish."

We conclude, on the basis of the record before us, that the charge against appellant is not an arbitrary application of the capital murder statute. Section 19.03(a)(2), supra, provides that a person commits capital murder if he intentionally commits murder in the course of committing or attempting to commit burglary. This statutory scheme has been upheld by the United States Supreme Court. *Jurek v. Texas,* —— U.S. ——, 96 S.Ct. 2950, 49 L.Ed.2d 929.

junction and the alleged offense. This consent consisted of appellant obtaining permission from Ken Davis to build a house on the property and to reside in it upon its completion. Appellant states that this consent was never withdrawn. It was, however, rendered meaningless by the injunction enjoining appellant from coming near the property.

Next, appellant states that the indictment is fatally defective because it charges the crime in the disjunctive and because it fails to negate an implied exception.

The pertinent part of the indictment reads:

". . . and the said defendant did then and there intentionally cause the death of the said Andrea Wilborn in the course of committing and attempting to commit the offense of burglary, to wit: the said defendant, without the effective consent of Priscilla Davis, the owner of a habitation, did then and there enter said habitation with the intent to murder Priscilla Davis. . . ."

Davis contends that because the indictment failed to allege a particular definition of "owner," one must substitute the statutory definition of "owner" for the single word "owner" in the indictment. The substitution, according to appellant, renders the indictment disjunctive because the definition of "owner" in Sec. 1.07(a)(24), supra, is written in the disjunctive.

■ Although it may be a better practice for the State to allege the type of "owner" on which it relies, we conclude that the indictment is sufficient to allege an offense against the laws of Texas. Furthermore, the briefs and record clearly demonstrate that appellant is fully aware of the theory of ownership upon which the State will rely.

■ Appellant's contention that the State has failed to negate an implied exception is also without merit. V.T.C.A. Penal Code Sec. 2.02 provides that the charging instrument must negate the existence of exceptions so labeled in the Code. There is no need to negate implied exceptions.

■ The final argument advanced in support of appellant's first ground of error states that the indictment and the proof will not support a capital murder conviction because of the felony merger doctrine. Appellant recites this version of the doctrine:

"[W]here there are two felonies committed but one of those felonies is dependent on the intent necessary for the second felony, there is in reality one intent, and the crimes merge."

We need not discuss the soundness of this statement of the doctrine, nor its status in this jurisdiction (cf. *Hilliard v. State,* Tex. Cr.App., 513 S.W.2d 28, 31), because the rule as stated is inapplicable to the facts in this case.

It is here alleged that appellant murdered Andrea Wilborn while committing or attempting to commit burglary. The burglary was allegedly committed with intent to murder Priscilla Davis. The intent to kill Priscilla Davis and the intent to kill Andrea Wilborn are not dependent on one another. These are two separate and distinct states of mind.

Appellant's first ground of error is in all things overruled.

Appellant next argues that the State failed to establish by proof evident that a jury would affirmatively find that there is a probability he would commit criminal acts of violence constituting a continuing threat to society. Art. 37.071, V.A.C.C.P. In *Ex parte Wilson,* Tex.Cr.App., 527 S.W.2d 310, 311, we stated:

"The Constitution of the State of Texas, Art. 1, Sec. 11, and the Code of Criminal Procedure, Art. 1.07, both provide that all prisoners are entitled to bail except those charged with a capital offense 'when the proof is evident.'

"The term 'proof is evident' means that the evidence is clear and strong, leading a well guarded and dispassionate judgment to the conclusion that the offense of capital murder has been committed; that the accused is the guilty party; and that the accused will not only be convicted but that the jury will return findings which will require a sentence of death." (citations omitted.)

■ The State has the burden of establishing that the proof is evident. *Ex parte Cevallos,* Tex.Cr.App., 537 S.W.2d 744. The trial judge concluded that the proof was evident. We must, however, ascertain the evidence and determine whether bail was properly denied. *Ex parte Wilson,* su-

pra; *Ex parte Hickox,* 90 Tex.Cr.R. 139, 233 S.W. 1100. In doing this, it is our policy to avoid an in-depth discussion of the facts and the sufficiency of the evidence where the case has yet to be tried on the merits. *Ex parte Sierra,* Tex.Cr.App., 514 S.W.2d 760.

[14] In order for the death penalty to be assessed, the jury must conclude beyond a reasonable doubt that there is a probability that the accused will commit criminal acts of violence constituting a continuing threat to society. Art. 37.071, supra. We have carefully reviewed the complex record made at the hearing below. We conclude that the trial judge did not abuse his discretion in concluding that the proof was evident on this issue.

Davis also argues that the trial court's order compelling him to submit to a psychological examination violated his privilege against self-incrimination guaranteed by Art. 1, Sec. 10 of the Texas Constitution and the Fifth and Fourteenth Amendments to the Constitution of the United States.

Dr. Holbrook, appellant's expert witness, testified that Davis would not commit criminal acts of violence constituting a continuing threat to society. The State requested the trial judge to compel appellant to submit to a psychological analysis by Dr. Patterson. The trial court, over objection, granted this motion which resulted in the introduction of the testimony of Dr. Patterson in regard to appellant's likelihood of committing future violent acts.

■ The State maintains that a habeas corpus proceeding instituted to secure bail is a civil proceeding, and therefore the trial court had authority to compel this examination under the Texas Rules of Civil Procedure. See, Tex.R.Civ.P. 167a. This is an erroneous assertion. In *State v. Morris,* Tex.Civ.App., 208 S.W.2d 701, 703, the court held:

"In order to determine whether a proceeding by habeas corpus to remove an unlawful restraint is to be regarded as a criminal or a civil case for jurisdictional purposes it is necessary to look to the cause of the restraint. If the restraint is by reason of a violation or a supposed violation of some criminal or quasi-criminal law, the proceeding will ordinarily be regarded as a criminal case; but if the restraint is not because of some supposed violation of criminal law, then the proceeding must be classed as a civil case."

We have before us a criminal case. The trial court was not authorized to compel a psychological examination of the appellant by the Rules of Civil Procedure.

■ However, the court did not violate the appellant's privilege against self-incrimination. The trial judge had the responsibility of determining whether the proof was evident. This decision was necessary to the granting or denying of bail. After hearing appellant's expert witness, the trial judge was not in error when he decided to elicit another opinion.

Furthermore, it must be kept in mind that the ultimate issue of guilt or innocence is not determined at the habeas hearing. The information elicited from Davis through the psychological examination conducted below was not used to incriminate him. Rather, it was used by the judge to make the bail determination. The trial judge can take precautionary steps to insure that the State does not use or introduce any information gained from this psychological examination in the guilt or punishment stage of the trial on the merits.

Without elaborating further on the facts, we also are of the opinion that appellant's grounds of error attacking proof evident in the alleged murder of Andrea Wilborn and asserting that the death penalty would be cruel and unusual punishment are likewise without merit.

We hold that the trial court did not abuse its discretion in denying the appellant bail in Cause No. 8029. It therefore becomes unnecessary for us to determine whether the bail granted in Cause No. 8028 was excessive since appellant must remain incarcerated pending disposition of the capital murder charge in Cause No. 8029.

For the reasons stated, the decision of the trial judge is affirmed and the relief is denied.

ROBERTS, Judge (concurring).

I agree that this is a criminal case. However, I cannot agree that the trial court had *any* authority to compel the appellant to submit to a psychological examination. The only purpose of this examination was to provide "evidence" to support a finding that the appellant should be held without bail.

We are not dealing with a trial and the determination of guilt or innocence; no issue of competency or insanity was raised or suggested, and therefore this psychological examination was not sanctioned by either Article 46.02 or Article 46.03 of our Code of Criminal Procedure.

Neither are we dealing with a hearing to determine punishment under Article 37.-071(a) of the Code of Criminal Procedure which allows such psychiatric testimony. See *Livingston v. State*, 542 S.W.2d 655 (Tex.Cr.App.1976).

Thus, the court erred in requiring the appellant to submit to a psychological examination, since there was absolutely no authority for such an examination. I would also hold that once the court had committed this error, it was error to allow the testimony of the doctor to be admitted into evidence.

However, I believe that the errors were harmless in the present case, since there was sufficient other evidence to support the court's finding that the appellant be held without bail under the authority of Art. I, Sec. 11, Vernon's Ann.Tex.Const. and Art. 1.07, Vernon's Ann.C.C.P.