Gwendolyn Elaine
**FREEMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1135–83.**

Court of Criminal Appeals of Texas,
En Banc.

April 2, 1986.

**600**

Ronald H. Tonkin, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. & Timothy G. Taft, Richard Mason & John Phillips, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

The question that we must resolve is whether, for purposes of our theft statute, see chapter 31, Penal Code, at the time of the commission of the alleged offense, Marsha F. Bourke, a security guard employed by Sears, Roebuck and Company, had the greater right to possession of property owned by that company than did Gwendolyn Elaine Freeman, hereinafter referred to as the appellant, a fellow employee of Bourke's who worked as a cashier-clerk at the same store, who was accused of stealing merchandise from the rightful lawful title owner of the property, Sears, Roebuck and Company, their mutual employer.

In an unpublished opinion, the Waco Court of Appeals, without any real discussion, merely concluded that Bourke "was the 'owner' and 'had greater right to possession of the property for purposes of theft prosecution.'" *Freeman v. State,* (Tex.App.-Waco, No. 10–83–104–Cr, November 23, 1983). We affirm.

The record reflects that the appellant was neither charged, tried nor convicted of being a party to the offense, see V.T.C.A., Penal Code, Section 7.01. The record, however, does reflect that the appellant was charged, tried and convicted of committing the offense individually.

The information on file in this cause, in pertinent part, accused the appellant of "unlawfully appropriat[ing] property by acquiring and exercising control over property other than real property, namely, two shirts and one gown, *owned by Marsha F. Bourke, a person having a greater right to possession of the property than the [appellant]* and hereafter styled the Complainant, of the value of over twenty dollars and under two hundred dollars, with the intent to deprive the complainant of the property, and without the effective consent of the complainant, namely, without any consent of any kind." (Our emphasis)

The record on appeal reflects that the appellant, although separately charged, was jointly tried with Jennifer Annette Stroud, her co-defendant, another fellow cashier employee who also worked at the same Sears & Roebuck store. The jury found them guilty. The trial judge assessed punishment for both the appellant and Stroud at 120 days' confinement in the Harris County Jail, probated for one year, and a $250 fine. As previously noted, the Waco Court of Appeals affirmed.

The facts most favorable to the verdict of the jury reflect that the appellant and Stroud were employed by Sears, Roebuck

and Company as cashiers at its store located on South Main Street in Houston. Stroud testified that she was off work on the day in question but had come to the store to pick up her paycheck and to do some Christmas shopping. The appellant testified that she was also off work that day but had been requested to come to work, which she did and was assigned to work the cash register-counter area where the alleged theft occured. The State's trial theory of the case was that the appellant and Stroud, while acting in concert, stole two shirts and one gown. However, for reasons not explicated in the record, the jury was not instructed on the law of parties.

Bourke, the named owner of the property allegedly stolen, testified that she was "a security manager for Sears, Roebuck and Company," who worked at the store in that capacity. Bourke also testified that she had "care, custody and control over the items and merchandise in [that] particular store." Bourke in her testimony, however, admitted that she was "not the [legal] owner of the [items allegedly stolen]": "No, I don't own the property." She also admitted that she did not have "a greater right to possession than either one of these people [referring to the appellant and Stroud]," but did have "a greater right of possession than someone who had not paid for something who is walking out of the store." Bourke testified that her job at the store was "to protect [Sears and Roebuck's assets]". From the aggressiveness Bourke demonstated when she testified, we can safely state to Sears & Roebuck that she performed her job with vigor and enthusiasm.

Bourke testified that at approximately 1:15 o'clock p.m. on the afternoon of the day in question her suspicions as a security guard toward the appellant became aroused "By the mannerism of Ms. Freeman [the appellant] handling a sale transaction in regards to Ms. Stroud's purchases." Bourke also testified: "I noticed from my location in the security office [while watching a closed circuit television screen] that there was a sack of merchandise that was stacked up by Ms. Freeman. She [the appellant] had turned her back directly against the register where she was working and turned away from it, sacked up this merchandise and placed it on the floor underneath her feet by the register that she was operating."

Bourke also testified that the appellant placed into one sack or bag State's exhibits numbered 1, 2 and 3, an infant's outfit and a "Mash" outfit, consisting of a top and bottom, after she had rung up the sale. Bourke further testified that, after the appellant rang up the sale for the above items, appellant then put into the same bag that contained the above items State's exhibits numbered 4, 5, and 6, which were two shirts and a nightgown, which are the items that the appellant allegedly stole. Bourke did not see the appellant ring up the sale for these items.

Bourke additionally testified that Stroud then proceeded to leave the counter with the bag containing all of the merchandise, which had been placed in State's exhibit number 7, a bag, and was proceeding toward an exit door when Bourke stopped her. Bourke asked Stroud if she could check the bag, but Stroud then "dropped the bag and kept walking out, didn't say anything." Bourke then retrieved the bag, which had a sales receipt stapled to it, and took it to a Mrs. Hormache, a saleslady, in order to ascertain what items in the bag matched the items on the sales receipt. It was determined that only the items listed as exhibits 1, 2, and 3 were accounted for on the sales receipt, and that the items listed as exhibits 4, 5, and 6 did not have a sales receipt in or attached to the bag.

The evidence showed that Stroud had used a credit card in making some of the purchases listed as State's exhibits numbered 1, 2, and 3. The credit card had been issued to another person, who apparently gave Stroud permission to use the card. The "approval slot" on the sales receipt was blank. By Bourke's testimony, this meant that the transaction was never cleared through "credit". This omission

also aroused Bourke's suspicions. Bourke testified that she "confiscated" the credit card, which was then located at the cash register assigned to the appellant. No other sales receipts, in particular for the items listed as exhibits 4, 5 and 6, were found in the bag. Bourke testified that she conducted a search in the appellant's cash register for "void tickets" but found none. Bourke voided the sale that had been made on the credit card.

Bourke also testified that Stroud made cash purchases for some panties and Tuffskin jeans during the time in question, but these were put in another bag that Stroud also took with her when she left the cash register station that the appellant was then manning. This bag was other than the one that Stroud had dropped on the floor, which Bourke retrieved. Thus, when Stroud left the cash register area that was manned by the appellant, but before she was stopped by Bourke, by Bourke's testimony she was carrying two bags. However, there is testimony in the record that in fact Stroud was carrying three bags when she was in the process of leaving the store before she was stopped by Bourke.

Appellant's testimony at trial, which we find was confusing and contradictory at times, conflicted greatly with that of Bourke's. Appellant testified that Stroud twice came to her cash register stand; the first time when she brought merchandise and paid for same with cash and a credit card. Appellant testified that nothing out of the ordinary occurred regarding this transaction. She testified that she put the merchandise in one bag, made a credit card sale, returned the credit card with a receipt to Stroud, apparently stapling the receipt to the bag, and then gave the bag to Stroud who then left her station. Appellant testified that because the credit card was issued to another employee of Sears, who she personally knew was the boyfriend of Stroud, under Sears & Roebuck's policy or rules it was not necessary for her to check with "credit" to see if the credit card was satisfactory before she rang up the sale.

Appellant also testified that after Stroud left her stand, Stroud later returned to her stand with other merchandise. Appellant testified that nothing out of the ordinary occurred regarding this sale. Stroud again used the credit card. Appellant rang up the sale, put the merchandise in a bag, returned the credit card to Stroud, apparently stapled the receipt to the bag, and then gave Stroud the bag. Stroud then left the appellant's counter with the second bag in hand.

Appellant testified that Stroud later telephoned her and told her that she thought she had left one of the bags at appellant's stand, and asked the appellant to check around the stand to see if the bag was there. Appellant did, but was unsuccessful in finding the bag.

This appears to be a case of first impression for this Court, in that by the statutory definition of the word "owner", prior to the actual commission of the offense, both the appellant and Bourke each had equal possessory interests in the merchandise, i.e., at that moment in time each had the care, custody, and control of the merchandise that appellant was accused of stealing. Cf. *Compton v. State*, 607 S.W.2d 246, 251 (Tex.Cr.App.1980), (Opinion on State's Motion for Rehearing), cert. denied, 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 197 (1981).

■ It is now axiomatic that the name of the title owner of the property or the lawful possessor of the property from whom it was unlawfully taken must be alleged in the charging instrument. Art. 21.08, V.A.C.C.P., states the following:

Where one person owns the property, and another person has the possession of the same, the ownership thereof may be alleged to be in either. Where property is owned in common, or jointly, by two or more persons, the ownership may be alleged to be in all or either of them. When the property belongs to the estate of a deceased person, the ownership may be alleged to be in the executor, administrator or heir of such deceased person, or in any one of such heirs. Where the ownership of the property is unknown to

the grand jury, it shall be sufficient to allege that fact.

Art. 21.08, supra, is a rule of pleading, however, and is not a part of the definition of the offense of theft. Under Art. 21.08, supra, an allegation of ownership may be alleged in either the actual owner or in a special owner of the property. *Roberts v. State,* 513 S.W.2d 870 (Tex.Cr.App.1974). However, the State, once having alleged ownership in either the actual owner or a special owner then has the burden of proving beyond a reasonable doubt the ownership allegation. *Smith v. State,* 638 S.W.2d 476 (Tex.Cr.App.1982); *Araiza v. State,* 555 S.W.2d 746 (Tex.Cr.App.1977). Also see *Gibbs v. State,* 610 S.W.2d 489 (Tex.Cr.App.1981).

To eliminate the distinctions between general and special owners, and to give anyone with a conceivable connection to the property ownership status, the Legislature, in defining the word "owner" as it did, clearly gave the word an expansive meaning: anyone having a possessory interest in the property through title, possession, whether lawful or not, or a greater right to possession to the property is an owner of the property. See V.T.C.A., Penal Code, Section 1.07(a)(24), which defines the word "owner" as follows: "[A] person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." The word "possession" is defined as follows: " 'Possession' means actual care, custody, control, or management." V.T.C.A., Penal Code, Section 1.07(a)(28).

■ The issue of "ownership" goes to the scope of the property interest protected by the law and is intended to protect all ownership interests in property from criminal behavior. When there are equal competing possessory interests in property allegedly stolen, we believe that the key to answering the question of which person has the greater right to possession of the property is who, *at the time of the commission of the offense,* had the greater right to possession of the property.

■ Based upon his position, a security guard of a company's store may be an "owner" of the company's merchandise or property for purposes of the theft statute, if, *at the time of the commission of the offense,* he had the greater right to possession than did the accused. *Johnson v. State,* 606 S.W.2d 894 (Tex.Cr.App.1980). *Smallwood v. State,* 607 S.W.2d 911 (Tex. Cr.App.1979). Of course, if the State alleges that such person is the "owner", it then has the burden of proof to establish that fact beyond a reasonable doubt, and a failure to prove that fact beyond a reasonable doubt will result in an acquittal being entered on behalf of the defendant. See *Commons v. State,* 575 S.W.2d 518 (Tex. Cr.App.1979). Also see *Inman v. State,* 650 S.W.2d 417, 419 (Tex.Cr.App.1983); *Turner v. State,* 636 S.W.2d 189, 193 (Tex. Cr.App.1982) (Opinion on rehearing). If a "special owner" of the property testifies without objection that he was the special owner of the property and had the greater right to possession of the property than did the accused, and the accused asserts no possessory interest in the property, then the evidence is clearly sufficient to show that he was the lawful owner of the property. *Dingler v. State,* 705 S.W.2d 144 (Tex. Cr.App.1984); *Hudson v. State,* 675 S.W.2d 507 (Tex.Cr.App.1984). However, proof of a management position alone is insufficient to sustain the ownership allegation absent some showing that the named owner had exercised some degree of care, custody, control, or management over the property allegedly stolen.

The definition of the word "owner", as statutorily defined, has been held *not* to be constitutionally vague. *Ex parte Davis,* 542 S.W.2d 192 (Tex.Cr.App.1976). In *Davis,* supra, this Court also stated the following: "The Legislature recognizes the concept that there are many types of possessory interests in property besides ownership in title. Such a concept has followed the development of Anglo-American civil and criminal jurisprudence." *Ex parte Davis,* supra, at 196. Thus, by the statutory definition of the word "owner," "ownership"

does not merely involve the *title* interest to property. Cf. Art. 1336, 1911 Penal Code, which provided: "If the person accused of the theft be part owner of the property, the taking does not come within the definition of theft, unless the person from whom it is taken be *wholly* entitled to the possession at the time." (Our emphasis.) Also see V.T.C.A., Penal Code, Section 31.10, which provides: "It is no defense to prosecution under this chapter that the actor has an interest in the property or service stolen if another person has the right of exclusive possession of the property." Cf. *Youngblood v. State*, 658 S.W.2d 598 (Tex.Cr.App. 1983), (Where the defendant, a minor who had not had his disabilities removed, entered into a contract with another person to sell that person an automobile, but thereafter "repossessed" the vehicle from the purchaser, which caused him to be charged with stealing the automobile. Held, the defendant's repossession of the vehicle, albeit done without the consent of the purchaser of the vehicle, constituted a disaffirmance of the contract between him and the purchaser, which in turn gave the defendant the greater right to possession of the vehicle than the purchaser).

However, in giving the word "owner" the definition that it did, because of situations such as we have here, where we have two persons who at one point in time had equal right to possession of the property, the Legislature's effort to globally eliminate *all* problems at trial concerning proof of ownership has been in vain.

■ We believe, however, that because the Legislature mandated that a person could become an owner of property if he had the greater right to possession of the property, where there are competing equal possessory interests in the property, the Legislature intended that in making the decision as to which of the competing interests had the greater right to possession of the property, the time of the actual commission of the offense is all important. In that instance, the employment relationship is not all determinative because each competing interest is equal. In this instance,

under *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the State had the burden of proof to establish beyond a reasonable doubt that at *the time of the actual commission of the offense* Bourke not only had a possessory interest in the property but that she also had the greater right to possession of the property than did the appellant.

In this instance, there is no evidence that Bourke's position as a security guard with the Sears & Roebuck store was superior to the appellant's position as a cashier-clerk; to the contrary, the evidence overwhelmingly demonstrates that Bourke and the appellant stood on an equal footing as far as possession of the merchandise went.

■ Thus, from the time that Stroud brought the merchandise to and placed it on the appellant's counter, in order to consummate a sale and purchase of the merchandise, and until after Stroud left the area manned by the appellant with the merchandise, it was the appellant who had the actual and physical possession of the merchandise, and the care, custody, control, and management of the merchandise as well. As to all other persons equally situated in their employment relationship with Sears & Roebuck at the store, and second only to any person occupying a superior position at that Sears' store, the appellant had the greater right to possession of the merchandise.

The appellant, however, never asserted that at the point in time when she relinquished the merchandise to Stroud she had either a possessory interest in the merchandise or that she had the greater right to possession of the merchandise than did Bourke. To the contrary, it was her position that she had not done anything wrong, i.e., that Stroud had lawfully purchased the merchandise, thus causing her to release the merchandise to Stroud. Bourke testified without objection that she had "a greater right of possession than someone who had not paid for something who is walking out of the store." However, such statement would be applicable to Stroud, not the appellant. Bourke herself admitted

that she did not have "a greater right to possession than either one of these people [referring to the appellant and Stroud]."

Thus, under these facts, there can be no doubt that at the time the appellant unlawfully relinquished the merchandise to Stroud, any person who established a possessory interest in the merchandise had a greater right to possession of the merchandise than did the appellant. The State alleged that Bourke had the greater right to possession of the property than did the appellant. By alleging that Bourke had the greater right to possession of the property than did the appellant, this necessarily included the allegation that Bourke had a possessory interest in the property. It was then incumbent upon the prosecution, from an evidentiary standpoint, to establish that Bourke had some sort of possessory interest in the merchandise—because without a possessory interest in the merchandise she could not have a greater right to possession of the merchandise than did the appellant. Ownership of some form of possessory interest in someone other than the accused is an essential element of the offense. Such must be alleged and proved. However, where the accused does not assert a possessory interest in property allegedly stolen, but the State proves that another had a possessory interest in the property, then, as a matter of law, between the two, the latter has established that he had the greater right to possession of the property, and in turn the State has established a prima facie case of ownership.

However, in this instance, the evidence established as a matter of law that the appellant was an "owner" of the property, as that term is statutorily defined, and that, as between her and Bourke, she had just as much, if not more, right to possession of the property as did Bourke. Viewing Bourke's testimony in the most favorable light, all that it established was that because of her relationship to the Sears & Roebuck store, as a security guard, she had a possessory interest in the merchandise that was allegedly stolen, but her testimony itself, standing alone, actually negates that she had a greater right to possession of the property than did the appellant—at least until the appellant relinquished the unpaid for merchandise to Stroud.

The offense of theft occurs when a person unlawfully appropriates property with intent to deprive the lawful owner of the property, and appropriation of property is unlawful if it is without the owner's effective consent. Appropriation occurs when one person unlawfully exercises control over property lawfully belonging to another. In this instance, the evidence is without dispute that Sears & Roebuck Company, a corporation, was the actual lawful owner of the property allegedly stolen, and the appellant does not dispute this fact. Because a corporation cannot itself testify or give direct testimony of either ownership or lack of consent, it is proper and the better practice to allege both ownership and lack of consent in a natural person who acted for the corporation, which is what the State attempted to do in this cause.

Given the facts and circumstances of this cause, we believe that the word "appropriation", as defined in the theft statute, taken in conjunction with the elements of the offense of theft, is not to be tested by mechanical rules such as characterized common law larceny. Implicit in the meaning of the word "appropriation", when it comes to competing and equal possessory interests in property, is that the accused person must have exercised "unauthorized" control over the property. In its "Tentative Draft No. 1," The American Law Institute, in its discussion on the subject, was careful to point out that until a fiduciary acts in some way inconsistent with his lawful authority, a theft conviction should not be permitted. However, when that person decides, for whatever reason, to unlawfully and permanently deprive the lawful owner of the property, he is then acting in an unauthorized capacity, i.e., he is then exercising unauthorized control over the property, and is not exercising authorized control over the property. In

short, at that moment in time he has breached the trust that his employer placed in him, and has in turn committed the offense of theft. The line between lawful and unlawful activity by an employee is therefore a question of the scope of his authority.

In this instance, when the appellant turned the unpaid for merchandise over to Stroud, knowing that Stroud had not paid for same, she was exercising unauthorized control over the merchandise. We find and hold that at the moment in time when she relinquished possession of the unpaid-for merchandise to Stroud she forfeited whatever possessory interest she might have had in the property because, by exerting unauthorized control over the property, she manifested her desire to permanently deprive Sears & Roebuck, the lawful owner of the property, of the property, and, by turning the merchandise over to Stroud, knowing that same had not been paid for, carried into action her desire to permanently deprive the lawful owner of the property.

When the appellant, because of her actions, forfeited any possessory interest in the merchandise, as between her and Bourke, Bourke, who the evidence established had a possessory interest in the merchandise because of her position as a security guard, had the greater right to possession of the merchandise.

The jury in this cause, in deciding the appellant's guilt, was actually faced with an easy choice, if for no other reason than the fact that the appellant asserted no defenses to the accusation. If the jury believed the appellant's testimony, that she had done nothing wrong, or had a reasonable doubt because of such testimony, they were obligated to acquit, or they had the right to disbelieve her testimony and believe that she exercised unauthorized control over the merchandise when she turned the unpaid for merchandise over to Stroud.

By its verdict, the jury chose to take the latter course of action. We find and hold that the evidence is more than sufficient for any rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. State*, 672 S.W.2d 801 (Tex.Cr.App.1984).

The judgment of the court of appeals, affirming the judgment of the trial court, is affirmed.

TOM G. DAVIS, McCORMICK, MILLER and CAMPBELL, JJ., concur in the result.

CLINTON, Judge, dissenting.

The majority opinion adds another chapter to a "fiction of law" conceived and composed in *Compton v. State*, 607 S.W.2d 246 (Tex.Cr.App.1980). *Johnson v. State*, 606 S.W.2d 894, 984 (Tex.Cr.App.1980) (Dissenting Opinion).

Just recently reprised in *Dingler v. State*, (Tex.Cr.App., No. 1086-83, delivered March 5, 1986) (Opinion on Rehearing), the theory is that "the employment relationship [between the person alleged as owner and the true owner] determine[s] who is the proper owner under [V.T.C.A. Penal Code,] Section 1.07(a)(24)," and thus will have "a greater right of possession" than an accused to certain property. *Compton*, supra, at 250–251.[1]

To make a way for that fiction *Compton* had to overrule *McGee v. State*, 572 S.W.2d 723 (Tex.Cr.App.1978), and in *Johnson v. State*, 606 S.W.2d 894, 896 (Tex.Cr.App. 1980), overrule *Commons v. State*, 575 S.W.2d 518 (Tex.Cr.App.1979). That done, the Court wrote a bit of comedy in *Smallwood v. State*, 607 S.W.2d 911 (Tex.Cr.App. 1979), regaling readers with how it is that a loading dock worker has "a greater right of possession" than a shoplifter to several pairs of pants boosted inside a store from a men's furnishing department. Again, the *Compton* story is still a fairy tale: An accused intends to deprive another of prop-

---

1. Our concern is with appropriation of property other than real property; the *Compton* formulation does not implicate a transfer or purported transfer of title to or "other *nonpossessory inter-*

*est* in property ..." V.T.C.A. Penal Code, § 31.-01(5)(A). (All emphasis is mine throughout unless otherwise indicated.)

erty that is not his in the first place, without consent that is not his to give in the second. *Johnson,* supra, at 896.

Today, the majority favors us with a mystery about who among employees of the same employer has that "greater right." As the majority analyzes it, the situation is "that by the statutory definition of the word 'owner,' prior to the actual commission of the offense, both the appellant and Bourke each had possessory interests in the merchandise, i.e., at that moment in time each had the care, custody, and control of the merchandise that appellant was accused of stealing." Opinion, p. 602. The truth is, of course, that in the sense contemplated by applicable statutory provisions neither the security guard nor the cashier had any *right* of possession to the two shirts and one gown actually owned and possessed by Sears.

One does not have an "interest" in property of another merely because he is an employee of the other. In determining whether one has "a right of possession," to look woodenly at "possession" solely in light of its statutory definition, V.T.C.A. Penal Code, § 1.07(a)(28)—actual care, custody, control or management—is to ignore the threshold principle that a personal "interest in property" is what may entitle one to possess it as a matter of right. "The Legislature recognized the concept that there are many types of possessory interest in property besides ownership in title." *Ex parte Davis,* 542 S.W.2d 192, 196 (Tex. Cr.App.1976). It is some kind of "possessory interest" of a person which creates for that one "a right of possession." Ordinarily an employee has no "possessory interest" in property of his employer that would provide him a right to possess it.

The difficulty in comprehending and applying concepts at work in theft cases is compounded by adherence to past judicial construction of pleading provisions in Article 21.08, V.A.C.C.P. Thus, worrying about "find[ing] any one individual in any given large corporation who can meet all the criteria of 'possession' . . .," *Compton,* supra at 251, the majority created the

"greater right of possession" theory. But as shown in my Concurring Opinion in *Dingler,* supra, the problem previously perceived under former codes of criminal procedure "no longer exists under the present code when construed in harmony with related provisions of the new penal code," so that we may now "eliminate the utter fiction of *Compton* . . ., that an employee of a corporation has 'a greater right to possession' of corporate personal property than a stranger to the corporation."

Because the majority continues to fictionalize an "owner" in theft cases, I respectfully dissent.

ONION, P.J., joins.