# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-09-00406-CR

---

**Elroy Smith, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-08-206744, HONORABLE JON N. WISSER, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

A jury convicted Elroy Smith of theft, third offense, after he removed a tool set valued at more than $50 and less than $500 from a Sears store. *See* Tex. Penal Code Ann. § 31.03(e)(4)(D) (West Supp. 2009). The trial court assessed punishment at 23 months' imprisonment. *See id.* Smith appeals, arguing in one point of error that the evidence was factually insufficient to support his conviction. We affirm the judgment of the trial court.

### BACKGROUND

At approximately 2:30 p.m. on November 20, 2008, Raymond Ryan, a loss-prevention manager at the Sears store at the Barton Creek Mall in Austin, Texas, was monitoring the store via a closed-circuit camera system.[1] He saw a man he identified at trial as Smith enter the store

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at trial.

through an entrance on the first floor.[2]  Smith was not carrying any merchandise with him when he entered the store.  Ryan testified that Smith demonstrated "alert signals" that indicated a potential shoplifter, including walking quickly and purposefully to a particular area of the store and staying close to the perimeter walls of the store.  Ryan also testified that Smith looked "familiar" to him.  Based on his observations, Ryan left the monitoring station for the sales floor to prevent a "grab-and-run."  Ryan called Victoria Watson,[3] another loss-prevention employee, and instructed her to replace him at the monitoring station.[4]

When he got to the sales floor, Ryan saw Smith pick up a Craftsman 260-piece mechanic's tool set.  Ryan watched as Smith headed toward the exit of the store, passing two cashiers but failing to pay for the tool set.  Ryan then exited the store ahead of Smith via a first-floor exit to the parking lot.  When Smith emerged from the store with the tool set, Ryan stepped in front of Smith, blocking his path to the parking lot.  Ryan identified himself and asked for a receipt for the tool set.  Smith pushed Ryan back, then put the tool set down on the sidewalk and raised his arm.  Ryan put up his hands to indicate that he did not want to fight, and Smith jogged away to a older-model gray-and-white pickup truck with an open bed.  As Smith slowly drove off, Ryan called 911.  William Hanson, an officer with the Austin Police Department (APD), testified that 911 dispatchers

---

[2]  The Sears store at the Barton Creek Mall has two floors, with street entrances and exits on each floor and an escalator between the floors in the middle of the store.

[3]  Watson has married since the time of the incident and changed her last name to Sanders.  As her name was Watson at the time of the incident and as she is listed as "Victoria Watson" in the indictment and the jury charge, we will refer to her as Watson in this opinion.

[4]  Ryan testified that, though the monitoring system had the capability to record video, the system was not set up to record at the time of the events described herein.

relayed a description of Smith as an African-American male wearing a blue shirt and driving a gray-and-white truck. Ryan testified that the truck drove off in the direction of the second-floor entrance to the Sears store.

Watson, who had reached the monitoring station after Ryan exited the store, testified that a short time later cameras showed a man in a dark-colored shirt[5] enter the store on the second floor and proceed down to the first floor on the escalator. Watson testified that the man was empty-handed when he entered the store. Upon reaching the first floor, the man picked up a 260-piece Craftsman tool set and returned to the escalator. When he reached the top of the escalator, the man waved to a person at a cashier's station before proceeding to exit the store.[6] Watson, who testified that she monitored the man from the time that he entered the store through the time that he exited the store, stated that at no point did the man stop to pay for the tool set. While the man was on the escalator, Watson reached Ryan on his cell phone and described the man as an African-American wearing a dark-colored shirt. Ryan indicated that this was the same person he had confronted on the sidewalk.

Based on the description Ryan had provided to 911 dispatchers, APD sergeant Michael Eveleth pulled Smith over less than a quarter-mile from the store. There was one passenger in the gray-and-white pickup truck with Smith, and in the flatbed of the pickup was a new 260-piece Craftsman tool set. APD brought Ryan to the scene, and Ryan identified Smith as the man he had

---

[5] Watson testified that the camera feed she was watching was in black-and-white, so she could not determine the precise color of the shirt.

[6] There was no evidence presented at trial regarding whether the person at the cashier's station was a store employee or just another customer.

encountered outside the store roughly 25 minutes earlier and identified the tool set as identical to the one the man had left on the sidewalk. The value of the tool set was $269.99.

At trial, Smith stipulated that he had been convicted of theft twice before. At the conclusion of trial, the jury found Smith guilty of theft, third offense, and the trial court assessed punishment at 23 months' imprisonment. *See* Tex. Penal Code Ann. § 31.03(e)(4)(D). This appeal followed.

## STANDARD OF REVIEW

In reviewing the factual sufficiency of the evidence, we consider all the evidence in a neutral light, while giving due deference to the fact-finder's determination. *See Sims v. State*, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003); *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). We must then determine whether the evidence supporting the verdict is so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. *See Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009). In a jury trial, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). We may not reweigh the evidence and substitute our judgment for that of the fact-finder. *King v. State*, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000).

## DISCUSSION

Smith argues that the evidence presented at trial was factually insufficient because the State did not present adequate evidence that the tool set was taken without the owner's consent. Under the penal code, a person commits theft "if he unlawfully appropriates property with intent to

4

deprive owner of property." Tex. Penal Code Ann. § 31.03(a). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1). Where property is owned by multiple people, the State may allege ownership in any one of them. Tex. Code Crim. Proc. Ann. art. 21.08 (West 2009); *Pickens v. State*, 768 S.W.2d 496, 496 (Tex. App.—Houston [1st Dist.] 1989, no pet.).

The penal code defines an owner as a person who has title to or possession of the property, or has "a greater right to possession of the property than the actor." Tex. Penal Code Ann. § 1.07(a)(35) (West Supp. 2009). Texas courts have noted that this definition is "expansive," *Freeman v. State*, 707 S.W.2d 597, 603 (Tex. Crim. App. 1986), and permits the recognition of "special owners," individuals who are "in custody or control of property belonging to another person." *Harrell v. State*, 852 S.W.2d 521, 523 (Tex. Crim. App. 1993). When a corporation is the owner of the property that has been stolen, Texas courts instruct that "it is the preferable pleading practice to allege special ownership in a natural person acting for the corporation." *Lewis v. State*, 193 S.W.3d 137, 140 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Simpson v. State*, 648 S.W.2d 1, 2 (Tex. Crim. App. 1983)). If the State makes such an allegation, it has the burden to prove special ownership beyond a reasonable doubt. *Id.*

In this case, the State alleged that Watson was the special owner of the tool set at the time Smith took it. *See Freeman*, 707 S.W.2d at 603 (explaining that "[b]ased upon h[er] position, a security guard of a company's store may be an 'owner' of the company's merchandise or property for purposes of the theft statute"). The State presented evidence that Watson was a loss-prevention employee at Sears at the time of the theft and that Watson monitored the inventory of merchandise on the floor, facts which show that she had a greater right to possession of the tool set than Smith.

5

*See id.*; *see also Tucker v. State*, No. 01-01-00873-CR, 2002 Tex. App. LEXIS 5895, at *6-7 (Tex. App.—Houston [1st Dist.] Aug. 15, 2002, pet. ref'd) (mem. op., not designated for publication) (holding that evidence was sufficient to show that loss-prevention officer whose job it was to prevent stealing of merchandise was "owner" of merchandise in theft case). The State also presented Watson's testimony that she did not give Smith her consent to take the tool set.

Smith, however, argues that this evidence is factually insufficient because other evidence indicates that another employee could have given Smith consent to take the tool set, and therefore the State failed to meet its burden. We note at the outset that, under the code of criminal procedure, the State only had the burden to show that Smith took the tool set without the consent of one owner. *See Pickens*, 768 S.W.2d at 496 ("Where there is more than one owner of property, the State is required to allege and prove ownership in only one of them.") (citing Tex. Code Crim. Proc. Ann. art. 21.08). Accordingly, the State was not required to prove that each employee who could potentially have provided consent did not do so. *See id.*

Further, while evidence that another employee gave Smith consent could negate Watson's special ownership of the tool set, the evidence presented by Smith does not rise to such a level. In his brief, Smith notes that Ryan and Watson lost sight of Smith on several occasions, and suggests that Smith could have paid for the merchandise during those times. However, evidence that Watson watched Smith enter the store, take the tool set, and leave the store without paying for it, combined with evidence that Smith was unable to produce a receipt for the tool set at any time, undermines such an assertion. In addition, Smith argues that the evidence that he waved to a person at a cashier's station during his second trip into the store provides proof that he had permission to take the tool set. However, the jury could draw a variety of conclusions from such an action, as there

6

was no evidence presented that Smith otherwise interacted with the person or even that the person was a store employee.[7]

Accordingly, we conclude that the evidence presented by the State demonstrates that Smith took the tool set without the owner's consent, *see* Tex. Penal Code Ann. §§ 1.07(a)(35), 31.03(b)(1), and the evidence is not so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. Smith's point of error is overruled.

## CONCLUSION

Finding no reversible error, we affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: April 16, 2010

Do Not Publish

---

[7] Smith also suggests that the State's investigation was incomplete and therefore improper because the State failed to interview employees who could have provided consent for Smith to take the tool set. While an accused's right to due process may be violated when the State's investigative procedures are so improper that they undermine confidence in the verdict, *see Cook v. State*, 940 S.W.2d 623, 630 (Tex. Crim. App. 1996) (citing *Foster v. California*, 394 U.S. 440 (1969)), the State's actions in this case do not rise to such a level.