

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00143-CR

JONATHAN DAVID GOODWIN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court at Law #3
Williamson County, Texas
Trial Court No. 16-04355-3, Honorable Doug Arnold, Presiding

November 2, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Jonathan David Goodwin appeals his conviction by jury of the offense of theft of property worth $100 or more but less than $750[1] and his resulting probated sentence and fine. Through one issue, appellant contends the evidence was insufficient to support his conviction. We will affirm.

---

[1] TEX. PENAL CODE ANN. § 31.03 (West 2018). This is a Class B misdemeanor. TEX. PENAL CODE ANN. § 31.03(e)(2)(A).

Background

Appellant was charged by information with unlawfully appropriating, "by acquiring or otherwise exercising control over property, to-wit: 2 Key Lumus [sic] Fishing Rods, of the value of $100 or more but less than $750, from the stock and inventory of Bass Pro Shop from Lee Earl Wellborn, employee or representative of Bass Pro Shop, the owner thereof, without the effective consent of the owner and with intent to deprive the owner of the property . . . ."

The events leading to appellant's prosecution occurred at the Bass Pro Shop in Round Rock, Texas. At his trial, it was undisputed that appellant left the store with two fishing rods he did not purchase there. The central issue for the jury's resolution was whether he brought the rods, owned by him, into the store with him, as he testified, or left the store with rods taken from the store's display, as the State contended.

Appellant was the only defense witness. He adamantly denied taking any fishing rods from Bass Pro Shop. He told the jury he brought two of his rods into the store and stopped at the customer service counter to ask if he could take them to the reel counter to be fitted for reels. He testified that, having received permission, he carried the rods to the reel counter and left them there while he browsed in the store. He said one of the rods was an "E6X Loomis," but the other was a brand the store did not carry.

As he left the store, appellant testified, he stopped again at the customer service counter to ask if he needed documentation that he was taking his rods back to his car and was told none was needed. Appellant said that as he walked out the door, he realized

that one of the rods was bent[2] so he went to his car, left one rod there, and returned to the store with the bent rod. He said he intended to exchange that rod for another, "because it was the same make, same model, everything" as a model sold there. But the store refused to exchange or issue a refund for the rod.[3] Video of the parking lot shows appellant returned the rod to his car and drove away.

The State's case was built around the testimony of three store employees and a detective, and surveillance video from the store.

After it heard the evidence, the jury found appellant guilty as charged in the information. After the verdict, appellant and the State reached an agreement with regard to punishment. In accordance with that agreement, the trial court assessed punishment against appellant at confinement in a county jail for 180 days, probated for fifteen months, and imposed a $2000 fine, probating all but $300. This appeal followed.

Analysis

As noted, through his appellate issue, appellant challenges the sufficiency of the evidence to support his conviction for theft. We examine sufficiency issues under the standard set out in *Jackson v. Virginia*, by which we view the evidence in the light most favorable to the verdict. *Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op)). We then decide, based on the evidence,

---

[2] Appellant testified "one of the eyes were bent on the rod . . . ."

[3] There was evidence that appellant had on previous occasions returned merchandise without a receipt.

whether a rational jury could find all the requisite elements beyond a reasonable doubt. *Id.* (citation omitted). We defer to the jury's finding when the record provides a conflict in the evidence. *Id.* (citation omitted). As the factfinder, the jury is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (the factfinder exclusively determines the weight and credibility of the evidence). Each fact need not point directly and independently to the guilt of the appellant as long as the "cumulative force of all of the incriminating circumstances is sufficient to support the conviction." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citation omitted). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* (citation omitted).

Section 31.03(a) of the Penal Code sets out the offense of theft: "A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property." *Byrd v. State,* 336 S.W.3d 242, 250-51 (Tex. Crim. App. 2011) (citing TEX. PENAL CODE ANN. § 31.03(a)). And subsection (b)(1) states, "appropriation of property is unlawful if . . . it is without the owner's effective consent." *Id.* (citing TEX. PENAL CODE ANN. § 31.03(b)(1)). "[T]he gravamen of theft is in depriving the true owner of the use, benefit, enjoyment or value of his property, without his consent." *Id.* Thus, "the gravamen of theft is two-pronged—taking certain specified property away from its rightful owner or depriving that owner of its use or enjoyment." *Id.* Ownership and appropriation of property are both important. *Id.*

4

Having reviewed the entire record, we find that, viewed in the light most favorable to the jury's verdict, the evidence was sufficient to support appellant's conviction. We initially note that the evidence gave the jury good reason to disbelieve appellant's version of the events. During his testimony, appellant acknowledged that the store surveillance video footage in evidence does not show him leaving rods at the reel counter, even though it depicts appellant in a lengthy conversation with the clerk at that counter. Likewise, appellant acknowledged that the conversation he described with the customer service attendant on his way out the door does not appear on the surveillance video in evidence, even though video depicts his return to the store with one rod and his interaction with the attendant.

In addition, appellant acknowledged during his testimony that, when a Round Rock police detective contacted him seeking information about the rods he carried from the store, appellant lied to the detective about several details. The detective testified at trial and the jury heard the recording of the phone call between appellant and the detective.

One of the three store employees who testified said she was the lead of the "operations support" team at the store. The team had the task of gathering evidence of thefts and forwarding it to the local police department,[4] and Lee Wellborn, the individual named in the indictment as the owner of the fishing rods, was a member of the team at the time of the theft. The team leader testified she and Wellborn saw appellant in the store the day of the theft. The jury was shown surveillance video of appellant in the store

_____

[4] She told the jury "you won't ever see the operations team try to apprehend anybody for theft" because Bass Pro Shops "values the safety of our associates more."

at 2:21 p.m. He did not have fishing rods in his hands. The jury then saw a portion of video showing appellant walking through the store's fishing rods section. He is empty-handed until he reappears in the frame at 2:46:40 holding two fishing rods. Three more portions of video, time-stamped between 2:47 and 2:48 p.m., show appellant walking through the store with two rods. A portion of the video shows appellant leaving the store at 2:48 p.m. with two rods. Several minutes later, appellant is seen on the video returning to the store with one rod. The team leader testified appellant attempted to return that rod. The surveillance footage supports that testimony, as does appellant's testimony.

Another store employee testified he worked at the reel counter. He testified appellant shopped at the store "pretty regularly" and he had a conversation with appellant the day of the alleged theft. The jury saw video footage of this conversation. The employee said appellant talked with him about purchasing a particular reel as a gift for a friend. The employee said he took a reel from the locked cabinet behind the counter, but that appellant never returned for the reel and he put it back in the cabinet at the end of the day, wondering why appellant never had returned. The employee also indicated he did not recall appellant asking him to hold any rods behind the counter that day and that appellant had only a cup in his hands when he came to the counter. As noted, the video reflects the conversation, and the Yeti brand cup, but no rods are visible.

The store's fishing sales manager testified that the rods appellant carried from the store were G Loomis EX6 rods, of a value of "roughly, $180" each. Under cross examination, he narrated the surveillance video, pointing out the rods' cork handles and markings from which he identified the brand and model. He said the two rods were

6

identical and affirmed that two rods of that brand were "missing" from the store's stock that day. He described the store's inventory control system.

Appellant testified he could not have taken a rod from the store without triggering a security alarm. He pointed out the security tags that appeared on the rods shown in photographs the State introduced. A store employee testified, however, that some rods escape being tagged[5] and she agreed that the rods "in this case" did not appear to be tagged.

The combination of direct and circumstantial evidence permitted a rational jury to agree with the store's fishing sales manager that the rods appellant carried from the store were rods from the store's stock. From this evidence and the rational inferences to be drawn therefrom, and taking into consideration that the jury was free to accept or reject any part or all of the testimony given by any witness, we find the jury rationally could have found, beyond a reasonable doubt, that appellant took the two identified fishing rods from the store, without their owner's consent and with the intent to deprive their owner of them. *See Jenkins v. State,* 493 S.W.3d 583, 599 (Tex. Crim. App. 2016) (the State may prove a defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence).

As part of appellant's sufficiency argument, he also contends the State failed to present evidence to show he deprived the named owner and entity, Lee Wellborn and Bass Pro Shops, of any property.

---

[5] She said that in the fishing department "because they have so many items, I would say is [sic] about 90 percent tagged."

The Penal Code defines an "owner" as "a person who . . . has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor[.]" TEX. PENAL CODE ANN. § 1.07(a)(35)(A). Either an actual owner or a special owner may be used in the State's pleadings. TEX. CODE CRIM. PROC. ANN. art. 21.08; *Byrd,* 336 S.W.3d at 251-52. A special owner is an individual who is in custody or control of property belonging to another person. *Harrell v. State,* 852 S.W.2d 521, 523 (Tex. Crim. App. 1993) (citation omitted). "When a corporation is the owner of the property that has been stolen, it is the preferable pleading practice to allege special ownership in a natural person acting for the corporation." *Lewis v. State,* 193 S.W.3d 137, 140 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citations omitted). Texas courts have found that employees hired to protect the property of a business and to keep the property from being stolen have a greater right of possession to the stolen property by virtue of that employment. *See Kindred v. State,* No. 10-10-00380-CR, 2011 Tex. App. LEXIS 7672, at *10-11 (Tex. App.—Waco Sept. 21, 2011, no pet.) (mem. op., not designated for publication) (citing *Johnson v. State,* 606 S.W.2d 894, 896 (Tex. Crim. App. 1980); *Freeman v. State,* 707 S.W.2d 597, 605 (Tex. Crim. App. 1986)).

Appellant argues his case is like that described in *Byrd,* 336 S.W.2d at 257. There, the State alleged appellant stole certain property from the owner, "Mike Morales." *Id.* at 244-45. At trial, however, the State proved Wal-Mart was the owner of the property and never mentioned "Mike Morales." *Id.* at 257. The Court of Criminal Appeals concluded, "In this case, the State failed to prove appellant stole any property from Mike Morales, whom it had alleged as the owner of the shoplifted items. Under *Malik, Gollihar,* and

8

*Fuller,* the State failed to prove the specific offense charged, and appellant is entitled to an acquittal of that specifically charged offense." *Id.*

The State distinguishes *Byrd,* arguing that in that case, the evidence contained no mention of the person alleged to be the owner, Mike Morales. Here, there was testimony describing Wellborn, his employment status with Bass Pro Shops, and his involvement in this case, as well as an explanation for his absence by the time of trial.[6] From this evidence, the jury rationally could have concluded Wellborn was the special owner of the fishing rods and was the same person as the individual alleged in the indictment. *Byrd,* 336 S.W.3d at 253. *See also Butler v. State,* No. 01-10-00725-CR, 2012 Tex. App. LEXIS 3021, at *9-10 (Tex. App.—Houston [1st Dist.] April 19, 2012, no pet.) (mem. op., not designated for publication) (addressing similar facts).

We overrule appellant's sole issue on appeal.

Conclusion

Having resolved appellant's issue against him, we affirm the judgment of the trial court.

James T. Campbell<br>Justice

Do not publish.

---

[6] Testimony showed Wellborn left the store and moved to Dallas for a new job.