**Susan Diane MENKE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–86–00208–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 5, 1987.

David H. Berg, Karrie Key, Houston, for appellant.

John B. Holmes, Jr., J. Harvey Hudson, Don Stricklin, Bill Taylor, III, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ROBERTSON and CANNON, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

The jury convicted the appellant, Susan Diane Menke [appellant or Menke] of theft. The trial court assessed her punishment at four years. This appeal follows.

The appellant brings six points of error. First, she says that the evidence is insufficient to support the jury's findings on two questions. One is whether the appellant knowingly took money without the effective consent of the owner. The other is whether she took property with intent to deprive the owner of its property. Second, the appellant asserts that the trial court erred in failing to give the jury one of the appellant's two requested charges regarding the precise offense alleged in the indictment. Third, the appellant claims that the trial court erred in refusing her requested charges on what she styles "affirmative defenses." Fourth, the appellant says that the trial court erred in overruling her motion to quash the indictment. Fifth, she says that the trial court denied her counsel the opportunity to conduct an effective cross examination of an important State witness, William B. Ryan [Ryan]. Sixth, the appellant asserts that the trial court erred in failing to allow her to use Ryan's recorded statement to impeach him.

Menke's involvement with the Hermann Hospital Estate [Estate] began quite innocently. Once a school teacher, she had changed careers and become a real estate broker. In an effort to procure new business, Menke telephoned the Estate to locate the person in charge of the Estate's real estate transactions. Her call was transferred to Ryan. She explained to Ryan that she was a broker who specialized in land located in Fort Bend County. Ryan arranged to meet with Menke for half an hour on the following day, April 19, 1983.

At that meeting Ryan explained to the appellant that he was an employee whom the board of trustees had hired to assist in managing the Estate. His title was Vice President and General Manager. He described to Menke various parcels of land and their prices. In addition, he informed her of the policy of the board of trustees not to grant exclusive listings on Estate properties. In early May, Ryan picked Menke up at her place of business and showed her several properties located in Fort Bend County.

Before the appellant and Ryan ever met, James MacNaughton had offered to purchase Estate property located in Fort Bend County. Although the trustees rejected Mr. MacNaughton's original offer, they approved the sale approximately ten days after Menke and Ryan met. Ryan informed Menke during the summer of 1983 that MacNaughton was purchasing the property. Menke had never met or had any dealings with the purchaser. She did not attend the closing on August 23, 1983. Nevertheless, Menke accepted a commission of $31,557.75 from the Estate for the sale. She deposited the check in her account on August 24. Within approximately two days after she received the check, she delivered $13,000 in cash to Ryan.

Menke did meet with one real estate purchaser about a purchase of Estate land on August 5, 1983. Walter Scarborough testified that Menke told him that his company would not be able to complete a purchase of real estate from the Estate unless she received the full commission. Menke cited a "special relationship" with Ryan. Scarborough told Menke that he had been represented by another real estate agent, and would not cut his agent out of the commission. Scarborough testified that when he inquired about Menke's ability to earn a portion of the commission, she aggressively informed him that there would be no sale unless she received the full commission. Scarborough decided not to complete the purchase.

Glen Loggins, a real estate developer, signed an earnest money contract on March 8, 1984 to purchase approximately 443 acres of land from the Estate. The parties to that contract also agreed in writing that the Estate would pay a five percent commission to Peter Morris at closing. Morris was an employee of Tejas Real Estate Services, Inc. This real estate company did not employ Miss Menke. Neither did she assist either party to the contract in the negotiations. Nevertheless, Ryan requested by interoffice memo that a check be prepared in the amount of $97,396.70, payable to Susan Menke Real Estate. He instructed the Comptroller to charge the check to the E. Roark Survey, Fort Bend

County. This was the vicinity of the land Glen Loggins proposed to purchase. Ryan picked up the check, forged the signature of a trustee, and delivered the check to Menke at her place of business. Ryan insisted that the money be split three ways, claiming that another officer of the Estate, Neill F. Amsler, Jr., was also involved in the transaction. Menke deposited the check. Several days later, she wrote two checks to Mr. Ryan, each for $32,465.56. The checks indicated that they were payments for services that Ryan had rendered as a consultant. Ryan had not rendered any such services. The sale of land that the earnest money contract contemplated never occurred.

■ The evidence is clearly sufficient to support the jury findings on the two questions in the appellant's first point of error. The relevant standard is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt after viewing the evidence in the light most favorable to the verdict of the jury. *Lewis v. State*, 715 S.W.2d 655, 657 (Tex.Crim.App.1986). The record is replete with evidence that the appellant accepted two checks totaling $128,954.45 for commissions that she did not earn. Evidence also in the record indicates that Menke knew of Ryan's limited authority to disperse funds. The record affords no reasonable basis for Menke to believe that Ryan had authority to give away the Estate's money by paying her for services never rendered. Moreover, Menke twice made payments back to Ryan, once in cash and once by two checks. Viewing the record as a whole, a rational trier of fact could have found beyond a reasonable doubt that the appellant knowingly took money without the effective consent of the Estate.

■ The appellant also argues in her first point of error that the evidence is insufficient to show that she took the property with the intent to deprive the complainant. She reasons that, in order to prove intent to deprive, the State must show that she either: (1) withheld property

from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property was lost to the owners; (2) restored the property only upon payment of reward or other compensation; or (3) disposed of the property in a manner that makes recovery of the property by the owner unlikely. This argument clearly misconceives the law applicable to this issue. Under Tex.Pen. Code Ann. § 31.03(a), the prosecution must prove the defendant's intent to deprive at the time of the taking. Even if a taking later becomes temporary, the temporary nature of the taking does not automatically negate intent to deprive the owner permanently or for a period long enough to satisfy the statutory definition. *Griffin v. State*, 614 S.W.2d 155, 159 (Tex.Crim.App. 1981). Menke's return of approximately $48,000.00 at the time she learned that she was under investigation does not indicate that she lacked the necessary intent. When she discovered that she was under investigation, she simply made an effort to return most of the funds that she had not "kicked back" to Ryan. It is clear from the record that a rational jury could have found beyond a reasonable doubt Menke's intent to permanently deprive the owner at the time she acquired the money. The appellant's first point is overruled.

The appellant's second point of error asserts that the court erred in failing to give the jury one of her two requested charges on section 31.01(2)(B) and section 31.09 of the Texas Penal Code. The indictment charged as follows:

... that in Harris County, Texas, SUSAN D. MENKE hereafter styled the Defendant heretofore on or about August 24, 1983, did then and there unlawfully appropriate by acquiring and otherwise exercising control over property, namely, money, owned by Hermann Hospital Estate, hereafter styled Complainant of the value of over twenty thousand dollars, with intent to deprive Complainant of the property, and without the effective consent of the complainant.

It is further presented that in Harris County, Texas, SUSAN D. MENKE, hereafter styled the Defendant, heretofore on or before July 10, 1984, did then and there unlawfully appropriate by acquiring and otherwise exercising control over property, namely, money, owned by Hermann Hospital Estate, hereafter styled the Complainant of the value of over twenty thousand dollars, with intent to deprive the Complainant of the property, and without the effective consent of the Complainant.

It is further presented that the above thefts were committed and the amounts obtained pursuant to one scheme and continuing course of conduct and the total value of the property was over twenty thousand dollars.

The trial court charged the jury as follows:

Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Susan D. Menke, in Harris County, Texas, either acting alone or with Bill Ryan, as a party to the offense, as that term has hereinbefore been defined, and pursuant to one scheme or continuing course of conduct beginning on or before August 24, 1983, and continuing through on or about July 10, 1984, did unlawfully appropriate by acquiring, or otherwise exercising control over property, namely, money, owned by the Hermann Hospital Estate, and the aggregate amount of the property so obtained was over twenty thousand dollars with intent to deprive Hermann Hospital Estate of the property, without the effective consent of Hermann Hospital Estate, you will find the defendant guilty as charged in the indictment.

If you do not so believe or you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty".

The appellant first argues that she was not properly charged because the above charge does not correspond with and incorporate the elements of the offense as charged in the indictment. In essence, she argues that the aggregation paragraph of the indictment incorporates the two alleged acts of theft in their entirety. Therefore, Appellant argues that in order to prove the aggregation paragraph the prosecution had

to prove (1) the first theft of over $20,-000.00; (2) the second theft of over $20,-000.00; and, (3) that both thefts occurred pursuant to one scheme and continuing course of conduct. Thus, the appellant argues, the jury charge as given does not require the jury to find all facts necessary to prove the aggregation offense as charged in the indictment.

■ The appellant's theory is contrary to existing precedent. *See Cooper v. State*, 707 S.W.2d 686, 689–90 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd); *see also Cashion v. State*, 657 S.W.2d 517, 518–19 (Tex.App.—Corpus Christi 1983, pet. ref'd) (similar indictment and charge, same result). If proof of the same facts or less than all the facts necessary to establish the offense charged also establishes another offense, the other offense is a lesser included offense. Tex.Code Crim.P. art. 37.09(1) (Vernon 1981); *Cooper*, 707 S.W.2d at 689. She reasons that the charge does not allow the jury to find that she committed only one of the thefts. If a defendant requests an instruction on a lesser included offense, and the evidence raises grounds for conviction upon the lesser included offense, the charge should allow the jury to find the defendant *guilty of the lesser offense*. *See Christian v. State*, 71 Tex. Crim.App. 566, 572, 161 S.W. 101, 102–03 (1913). Uncontroverted evidence demonstrates that Menke acquired money on both occasions. She acquired $31,557.75 on the first occasion and $97,396.70 on the second occasion, for a total of $128,954.45. Nothing in the record indicates that she had earned any real estate commissions. Thus, under the evidence in the record she was either guilty of both thefts or a reasonable doubt remained as to both thefts. Moreover, the appellant did not object or request an instruction that put the trial court on notice that the defendant wanted such an instruction. Therefore, she has waived any error in this respect.

The appellant reasons further that the charge did not allow the jury to find that she did commit both thefts, but that a reasonable doubt remained whether she committed the thefts pursuant to one scheme or continuing course of conduct. In fact, the jury charge required the jury to find a scheme or continuing course of conduct, and to find the defendant "not guilty" if it had a reasonable doubt thereof. The appellant's second point is overruled.

■ The appellant claims in her third point of error that the trial court erred in refusing Appellant's request of charges on what she describes as "affirmative defenses." Defenses do not merely negate an element of the offense. *Sanders v. State*, 707 S.W.2d 78, 81 (Tex.Crim.App.1986). If the evidence supporting a defensive theory merely negates an element of the crime, no affirmative defense charge is necessary. *Sanders*, 707 S.W.2d at 81. The appellant's theory raised only a claim of mistake of fact. The court's instructions to the jury adequately covered that mistake of fact theory. The court instructed the jury that if it had a reasonable doubt as to whether (1) Menke reasonably believed that the Estate had given its effective consent and (2) the mistaken belief negated the necessary culpability, the jury should find her "not guilty." Appellant's third point is overruled.

■ Menke's fourth point of error is that the trial court erred in failing to grant her motion to quash the indictment. She argues that, because the indictment failed to specify the manner in which she intended to deprive the Estate of the property, the indictment failed to give her notice adequate to prepare her defense. In support of her position Menke relies on *Hoover v. State*, 707 S.W.2d 144 (Tex.App.—Houston [14th Dist.] 1986, *rev'd in unpublished opinion*). *Hoover* is clearly distinguishable from the present case. However, shortly before this court's decision in *Hoover*, the Texas Court of Criminal Appeals decided *Adams v. State*, 707 S.W.2d 900 (Tex.Crim.App.1986). In *Adams*, the Texas Court of Criminal Appeals stated:

The first step in answering this question is to decide whether the charging instrument failed to convey some requisite item of "notice". If sufficient notice is given, this ends our inquiry. If not, the next step is to decide whether, in the

context of the case, this had an impact on the defendant's ability to prepare a defense, and, finally, how great an impact. 707 S.W.2d at 903. Upon remand in *Hoover*, this court applied the *Adams* analysis and *Opdahl v. State*, 705 S.W.2d 697 (Tex. Crim.App.1986). Ultimately, this court decided that the defendant had received notice adequate to prepare his defense. In the present case, the description of the offenses in the indictment clearly gave sufficient notice.

The appellant also urges, based on *Hoover*, that the indictment in the present case would not serve as an adequate bar to future prosecutions. Hence, she argues, the indictment should have been quashed. In *Hoover*, this court suggested in dicta that the indictment should have been quashed because the State's failure to specify a definition of "deprive" in the indictment created an unacceptable degree of ambiguity. We withdraw this dicta.

A definition of "deprive" was clearly unnecessary to the indictment in the present case. The indictment provided both adequate notice for a fair trial and an adequate ground for a plea in bar. The appellant's fourth point is overruled.

■ Menke's fifth point of error charges that the trial court denied her counsel the opportunity to conduct an effective cross-examination of the State's chief witness. At trial, Menke attempted to produce evidence that Ryan had a long history of issuing checks to different fictitious payees, signing his name, and forging a trustee's name. Ryan's past activities were similar to the scheme that the State alleged in the instant case. The appellant contended at trial that evidence of the past forgeries should be admitted (1) to demonstrate the bias of the witness; (2) to place the witness in his proper context; and (3) to negate her knowledge that she lacked the owner's effective consent when she accepted the money from Ryan. Texas law allows the accused great latitude in showing any fact, including pending charges, which would tend to establish the ill feeling, bias, motive, or animus of any witness testifying against him. *Simmons v. State*,

548 S.W.2d 386, 388 (Tex.Crim.App.1977). The trial court did permit the appellant to prove that Ryan was under indictment for numerous thefts of money from the Estate. The trial court also allowed Menke to put evidence of Ryan's cooperation and prior meetings with the prosecution before the jury. Thus, the trial court allowed the appellant to demonstrate both Ryan's bias and the context in which he testified. However, the trial court's refusal to allow appellant to prove the details of Ryan's previous offenses was questionable because those details tend to negate her knowledge that she was acquiring the property of another without the owner's effective consent. Nevertheless, the trial court's ruling did not diminish her counsel's effectiveness in cross-examining Ryan. The trial court received considerable evidence of Ryan's earlier transactions. Additional evidence regarding these transactions would merely have been cumulative. As a result, admitting further evidence of these transactions would not have made the cross-examination of Ryan more effective. Any error in this ruling on admissibility was harmless. The appellant's fifth point is overruled.

■ Menke asserts in her sixth point of error that the trial court erred in denying trial counsel the right to cross-examine and impeach Ryan with his recorded statements about her. The *Gaskin* rule provides that when a State's witness has made a report or statement before testifying, the defendant, after timely request, is entitled to inspect and use the report or statement for cross-examination and impeachment purposes, even though the witness may not have used the instrument to refresh his memory. *Gaskin v. State*, 172 Tex.Cr.R. 7, 353 S.W.2d 467 (1961). The Texas Court of Criminal Appeals never squarely addressed the applicability of the *Gaskin* rule to tape-recorded statements until *Cullen v. State*, 719 S.W.2d 195, 197 (Tex.Crim.App.1986). Nevertheless, several cases in Texas Court of Criminal Appeals before that time seemed to indicate that the *Gaskin* rule applied to tape-recorded statements before *Cullen*. E.g. *Buffington v. State*, 652

S.W.2d 394 (Tex.Crim.App.1983) (Onion, J., concurring, Clinton, J., dissenting); *Johnson v. State*, 650 S.W.2d 784 (Tex.Crim. App.1983); *Williams v. State*, 542 S.W.2d 131 (Tex.Crim.App.1976). Under *Cullen*, if a recording consists solely of a witness relating the events of a crime without any questions by the prosecutor, *Gaskin* applies. 719 S.W.2d at 198. On the other hand, if the recording contains only the work product of the prosecutor, such as comments by the prosecutor about his trial strategy and his opinions of the strengths and weaknesses of his case, the recording will not be discoverable under *Gaskin*. 719 S.W.2d at 198. *Cullen* created a duty for the trial court to review in camera the recordings that fall between those two extremes and to make a determination about what portions the defendant is entitled to receive and use under *Gaskin*. *Id*. After that determination, the defendant is entitled to a copy of the tape from which the portions not discoverable under *Gaskin* have been excised. *Id*. If a transcript of the portion of the recording which falls within the *Gaskin* rule is available, the defendant is also entitled to a copy of that transcript. *Id*. In the present case, the trial court did not have the benefit of the Court of Criminal Appeals' *Cullen* opinion. The appellant did have access to the tapes of Ryan's statements. However, the trial court refused to allow her to use a taped statement that directly contradicted Ryan's statement on the witness stand. Mr. Coffee was a trustee of the Estate. Ryan testified that he forged Coffee's name on the first commission check that he gave to Menke. On the tape, Mr. Ryan told the prosecutor that Coffee signed the first commission check that he gave to Menke. This statement was clearly discoverable under *Gaskin*. The State argues in its brief that this statement concerned an immaterial and collateral issue. Therefore, the State argues, the testimony was properly excluded. However, the defense was attempting to introduce a recorded statement that directly contradicted the testimony that the State brought out in its own direct examination. The State elicited this information by asking a specific question in an attempt to show the defendant's lack of effective consent in acquiring the first check. Therefore, the defendant was not attempting to use the witness' recorded statement to impeach the witness on an immaterial and collateral matter. The trial court erred in refusing to allow the defendant to use the witness' recorded statement to impeach the witness.

As a result, this court must determine the harmfulness of the trial court's *Gaskin* error. 719 S.W.2d at 198. The test for harmfulness of the error is whether the accused was denied effective cross-examination or possible impeachment of the witness. 719 S.W.2d at 197. Careful examination of the record has convinced us that, despite the exclusion of the particular recorded statement at issue, the trial court did not deny the accused effective cross-examination. Furthermore, the evidence in the record so clearly establishes Ryan's bias and so thoroughly destroys his credibility that the exposure of these particular contradictory statements to impeach his statements at trial would merely have been cumulative. Ryan stated during cross-examination that he could not remember what he told the prosecutors on the date the tape was made. He stated before the jury that he would not deny under oath that he previously told prosecutors the signature was genuine. Clearly, the recorded statement was unnecessary to trial counsel's quite thorough impeachment of the witness regarding Coffee's signature. Therefore, the trial court's breach of the *Gaskin* rule was harmless error. In accordance with *Cullen*, Appellant's sixth and final point of error is overruled.

The judgment of the trial court is affirmed.