**Donald NEWMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–02–00092–CR.

Court of Appeals of Texas, Texarkana.

Submitted July 11, 2003.

Decided July 17, 2003.

Troy A. Hornsby, Miller, James, Miller & Hornsby, LLP, Texarkana, for Appellant.

James H. Elliott, Bowie County Asst. District Attorney, Texarkana, for Appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Donald Newman (Mark)[1] appeals his jury conviction of theft over $20,000.00 but

---

1. Mr. Newman is referred to in the indictment and judgment as "Donald" Newman.

However, throughout the reporter's record,

less than $100,000.00. Mark was sentenced to ten years' imprisonment. In four points of error, he contends the evidence was both legally and factually insufficient to support the judgment. For the reasons stated below, we overrule these contentions and affirm the judgment.

Mark was employed by E–Z Mart Stores, Inc., in its M.I.S. (computer) department. Sometime before August 1999, Mark and Sonja Hubbard, president and CEO of E–Z Mart, discussed the prospect of Mark purchasing fifty laptop computers from Grand Central Computers of New York on behalf of E–Z Mart. After looking at other alternatives, Hubbard decided to proceed with the purchase, using Mark as E–Z Mart's intermediary. Hubbard wrote a check to Grand Central Computers in the amount of $79,218.38 and gave it to Mark to purchase the computers.

Instead of purchasing the computers from Grand Central Computers, Mark and his wife, Desha, traveled to Shreveport, Louisiana, and deposited the check into an account at Bank One belonging to Desha. Desha had opened the Bank One account under the name of Grand Central Computers a few days earlier, using falsified corporate documents. The next day, Desha wrote a check for $79,218.38 drawn on the new Grand Central Computers account, payable to Late Kick Farms, a corporate account belonging to Mark. Mark then wrote a check from his Late Kick Farms account in the amount of $66,162.45 to Insight Computers, Inc., for the purchase of fifty computers with less memory than E–Z Mart had agreed to. No money, however, was transferred from E–Z Mart to the new Grand Central Computers account or from Desha's Grand Central Computers account to Mark's Late Kick Farms account.

In four points of error, Mark contends the evidence was legally and factually insufficient to support his conviction. Specifically, Mark contends: (1) the evidence was factually and legally insufficient to support his conviction for theft where the evidence established he never controlled the money from the check at issue; (2) the evidence was factually and legally insufficient to support a conviction of theft of $79,218.38 where the evidence established Mark only appropriated a check that was never credited to Desha's Grand Central Computers account; (3) the evidence was factually and legally insufficient to support the allegation Mark intended to steal the entire $79,218.38; and (4) the evidence was only sufficient to establish that Mark's intent to steal, if any, was the amount of $13,055.93 (the difference between the amount of the check and the cost of the replacement computers).

In its response to all four points of error, the State contends Mark was indicted for theft of United States currency in the form of a check worth $79,218.38, and once Mark and his wife deposited the check in the Bank One account, theft of the full value of the check occurred. In reviewing the evidence for legal sufficiency, we look at all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Sells v. State*, —— S.W.3d ——, ——, No. 73,993, 2003 WL 1055328, at *7-8, 2003 Tex.Crim. App. LEXIS 63, at *4–5 (Mar. 12, 2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Any inconsistencies in the evidence should be resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim. App.1988).

he is referred to as "Mark"; therefore, in this opinion, we refer to Mr. Newman as "Mark."

In a factual sufficiency review, we view all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if the evidence supporting the verdict is so weak or so against the great weight and preponderance of contrary evidence as to render the verdict clearly wrong and manifestly unjust. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000). A clearly wrong and unjust verdict occurs where the jury's finding is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias."

The offense of theft occurs when a person unlawfully appropriates property with intent to deprive the owner of the property. TEX. PEN.CODE ANN. § 31.03(a) (Vernon 2003).

■ To "appropriate" means to acquire or otherwise exercise control over property. TEX. PEN.CODE ANN. § 31.01(4)(B) (Vernon 2003). In the employer-employee context, an unlawful appropriation occurs when an employee exercises unauthorized control over property belonging to the employee's employer. *See Freeman v. State,* 707 S.W.2d 597, 605 (Tex.Crim.App.1986). Theft does not occur until a fiduciary acts in some way inconsistent with his or her lawful authority. *See id.* at 606. But when the employee decides, for whatever reason, to unlawfully deprive[2] the lawful owner of the property, such employee acts in an unauthorized capacity. *See id.* In short, unlawful appropriation occurs at that moment in time when the employee breaches the trust that employee's employer placed in her or him. The line between lawful and unlawful activity by an employee, therefore, is a question of the employee's scope of authority. *See id.*

■ In Texas, the "property" subject to theft can be real property, personal property, or a "document, including money, that represents or embodies anything of value." TEX. PEN.CODE ANN. § 31.01(5) (Vernon 2003). A check can be considered property under the Texas Penal Code. *See Simmons v. State,* 109 S.W.3d 469, 472, 2003 WL 21509071, at *2, 2003 Tex.Crim. App. LEXIS 161, at *6 (July 2, 2003).

In this case, the State alleged Mark:

on or about August 11, 1999, did then and there unlawfully appropriate, by acquiring or otherwise exercising control over property, to wit: United States currency in the form of a check, of the value or [sic] $20,000 or more, but less than $100,000, with intent to deprive the owner, Sonya Hubbard, of the property.

To convict Mark under Section 31.03 as authorized by the indictment, the State needed to prove Mark intentionally or knowingly took United States currency in the form of a check belonging to Hubbard, with intent to deprive her of the check.

In his first and second points of error, Mark contends the evidence was factually and legally insufficient to show he actually appropriated property worth $79,218.38. Specifically, Mark insists that, because he never controlled $79,218.38 from E–Z Mart's account, he never actually appropriated the property. In making this argument, Mark points to the fact that no money was ever transferred from E–Z Mart's account to Desha's Grand Central Computers account.

---

2. Unlike the penal codes of many other states and the Model Penal Code, Texas does not require the intent to *"permanently"* deprive the owner of the property. The Texas Penal Code defines deprive as: "to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner." TEX. PEN.CODE ANN. § 31.01(2)(A) (Vernon 2003).

■ This argument, however, is without merit. First, the State indicted Mark for the theft of the check itself, not the funds represented by the check. This is an important distinction. Under the indictment, the State was required to prove Mark unlawfully appropriated a check worth $79,218.38, not to show that the funds represented by the check were ever actually controlled by Mark.

The undisputed facts are as follows: First, Mark and Desha took the check and deposited it into Desha's Grand Central Computers account at Bank One. Hubbard testified this act was beyond Mark's authority as an employee of E–Z Mart. Moreover, it is undisputed Hubbard was the owner of the check. Under these facts, there was factually and legally sufficient evidence showing Mark unlawfully appropriated a check belonging to Hubbard.

■ The only outstanding issue under Mark's first and second points of error is whether there was sufficient evidence to show Mark unlawfully appropriated property valued at more than $20,000.00 and less than $100,000.00. On this issue, the Texas Court of Criminal Appeals recently held that, in cases involving the theft of checks, the face value of the check is presumptive evidence of the check's value. *See id.* at 477, at *3. Here, the face value of the check was $79,218.38. This written value, absent disputed evidence, is sufficient to show the check was worth $79,218.38. *See id.* The evidence, therefore, was factually and legally sufficient to show Mark unlawfully appropriated a check worth $79,218.38 with the intent to deprive Hubbard of the check. Mark's first and second points of error are overruled.

■ In his third and fourth points of error, Mark contends the evidence was factually and legally insufficient to show he intended to steal the entire $79,218.38. Rather, Mark argues, his intention, if any, was only to deprive Hubbard and E–Z Mart of $13,055.93. In support of this contention, Mark points to the fact he attempted to write a check for $66,162.45 for replacement computers.

■ This contention also is without merit. As stated above, Mark was indicted for the theft of a check, not the funds the check represents. Once Mark unlawfully appropriated the check with the intent to deprive Hubbard of the check, the offense of theft was complete. Subsequent replacement of all or part of the property or replacing the property with other similar property does not defeat prosecution for the full value of the original property. *See Menke v. State,* 740 S.W.2d 861, 864 (Tex.App.-Houston [14th Dist.] 1987, pet. ref'd) (citing *Griffin v. State,* 614 S.W.2d 155, 159 (Tex.Crim.App. [Panel Op.] 1981)).

Here, Mark and Desha deposited the check into the Bank One Grand Central Computers account. At that moment, a rational jury could have found beyond a reasonable doubt Mark knowingly and unlawfully appropriated the check with the intent to deprive Hubbard of the entire check valued at $79,218.38. The evidence, therefore, was factually and legally sufficient to show Mark intended to deprive Hubbard of the full value of the check. We overrule Mark's third and fourth points of error.

We affirm the judgment.