**Opinion issued April 30, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00176-CR

_____

## JOHN WILLIAM MITCHELL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 412th District Court
Brazoria County, Texas
Trial Court Case No. 80226-CR

## MEMORANDUM OPINION

John William Mitchell was indicted for aggregate theft of property, specifically, "money," based on his unauthorized use of a company charge card for personal expenses. *See* TEX. PENAL CODE §§ 31.03, 31.09. Mitchell was tried, convicted, and sentenced to 12 months' confinement. In two issues, Mitchell

contends there is legally insufficient evidence that he (1) unlawfully appropriated "money" as alleged in the indictment and (2) intended to deprive the company of "money" when he made the unauthorized charges.

We affirm.

## Background

This is a case of employment-related theft. In February 2016, Mitchell was hired as a driver by Century Concrete Partners, Inc. ("the Company"). The Company issued Mitchell a charge card to purchase diesel fuel for his company vehicle. To receive the charge card, Mitchell had to sign an Employee Fuel Card Agreement.

Under the agreement, Mitchell was permitted to use the charge card for nonfuel business expenses. But such expenses had to be pre-approved and supported by a receipt. If Mitchell failed to obtain approval or submit a receipt for a nonfuel business expense, the expense would be charged back to Mitchell "in full by payroll deduction." The agreement further provided that "under no circumstances" could Mitchell use the charge card "to make personal purchases." The agreement warned that "[w]illful intent" to use the charge card for "personal gain" would "result in disciplinary action up to and including termination of employment and criminal prosecution."

2

In September 2016, the Company reviewed Mitchell's charge card account and discovered a large number of non-diesel and nonfuel purchases that were made when Mitchell was not on duty and at locations where the Company was not doing work. The charges had occurred over the course of Mitchell's seven-month employment. (A representative of the Company admitted that during this time the Company did a poor job of reconciling its drivers' charge card accounts.) Mitchell had not obtained pre-approval for these charges, and he had not submitted any receipts for them either. Most of the unauthorized charges were made at a particular service station located in Channelview, Texas, near Mitchell's residence. Many of them were made in round $50 increments with no sales tax.

When confronted with the unauthorized charges, Mitchell admitted to making personal purchases on his charge card, including filling up his personal vehicle with unleaded gasoline on a few occasions. But Mitchell disagreed with the total amount of unauthorized purchases claimed by the Company.

The Company terminated Mitchell's employment and reported the matter to law enforcement, resulting in Mitchell's indictment for aggregate theft. Mitchell pleaded not guilty, and the case went to trial, where the State presented evidence showing a total loss to the Company in the amount of $15,814.89.

At the end of trial, the jury found Mitchell guilty, and the trial court sentenced him to 12 months' confinement. Mitchell appeals.

## Legal Sufficiency

In two issues, Mitchell contends there is legally insufficient evidence that he (1) unlawfully appropriated "money" as alleged in the indictment and (2) intended to deprive the Company of "money" when he made the unauthorized charges.

### A. Applicable law and standard of review

A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of it. TEX. PENAL CODE § 31.03(a). Appropriation is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1).

In the employer-employee context, an unlawful appropriation occurs when an employee exercises unauthorized control over property belonging to the employer with intent to deprive the employer of that property. *See Freeman v. State*, 707 S.W.2d 597, 605 (Tex. Crim. App. 1986); *Newman v. State*, 115 S.W.3d 118, 121 (Tex. App.—Texarkana 2003, no pet.). The line between lawful and unlawful activity by an employee is therefore a question of the scope of the employee's authority. *Freeman*, 707 S.W.2d at 606.

In a legal sufficiency review, we review the evidence in the light most favorable to the verdict and ask whether any rational factfinder could have found the elements of the charged offense beyond a reasonable doubt. *Fernandez v. State*, 479 S.W.3d 835, 837–38 (Tex. Crim. App. 2016). If a rational factfinder could have so found, we will not disturb the verdict on appeal. *Id.* at 838.

**B.     Appropriation of "money"**

In his first issue, Mitchell contends that there is legally insufficient evidence that he committed theft of "money" as alleged in the indictment. By presenting evidence of his unauthorized use of the Company charge card, Mitchell contends, the State showed that he unlawfully appropriated credit, not money, resulting in a material variance between the allegations in the indictment and the proof at trial. *See Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001) ("A 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial."). Because of this variance, Mitchell argues that the evidence is insufficient to support his conviction. *See id.* at 247 (variance claims are treated as legal sufficiency challenges). We disagree.

We considered and rejected a nearly identical argument in *Beatty v. State*, No. 01-08-00335-CR, 2010 WL 2133870 (Tex. App.—Houston [1st Dist.] May 27, 2010, pet. ref'd) (mem. op., not designated for publication). There, the director of a small charity was convicted of aggregate theft based on his unauthorized use of the charity's credit cards for personal expenses. *Id.* at *1–5. On appeal, the director argued that there was a material variance between the indictment, which alleged that he stole "money," and the evidence offered at trial, which showed that he charged a large amount of personal expenses on the charity's credit cards without authorization and never paid the balance. *Id.* at *8. We rejected this

5

argument, reasoning that the director's use of the charity's credit cards was simply the instrument by which he stole the charity's money to pay for his personal expenses. *Id.*

*Beatty* is directly on point. Like the director of the charity, Mitchell used the Company's charge card to pay for personal expenses without authorization. He never paid, or attempted to pay, the balance. Mitchell's use of the Company's charge card was the instrument by which he stole the Company's money.

Mitchell contends that the unauthorized purchases he made with the Company charge card constitutes credit card abuse under Penal Code section 32.21(b)(1)(A). *See* TEX. PENAL CODE § 32.21(b)(1)(A) ("A person commits an offense if . . . with intent to obtain a benefit fraudulently, he presents or uses a credit card or debit card with knowledge that . . . the card, whether or not expired, has not been issued to him and is not used with the effective consent of the cardholder."). Because his conduct constitutes credit card abuse, and because credit card abuse is not theft, Mitchell argues that the evidence is insufficient to show he also committed theft under Penal Code section 31.03. *See id.* § 31.03(a). We disagree.

As courts have recognized, conduct that violates section 32.21(b)(1)(A) and thus constitutes credit card abuse also violates section 31.03 and thus constitutes theft. *See Rabb v. State*, 681 S.W.2d 152, 154–55 (Tex. App.—Houston [14th

Dist.] 1984, pet. ref'd) ("[T]he conduct specified in [the predecessor of section 32.21(b)(1)(A)] is clearly theft under Section 31.03."); *Garcia v. State*, 669 S.W.2d 169, 171 (Tex. App.—Dallas 1984, pet. ref'd) (same). Thus, assuming without deciding Mitchell is right that the evidence is sufficient to show he committed credit card abuse under section 32.21(b)(1)(A), it follows that the evidence is sufficient to show he also committed theft under section 31.03. Mitchell's argument is therefore self-defeating.

Mitchell cites three cases to show that credit card abuse is not theft. *See Watson v. State*, 923 S.W.2d 829, 834 (Tex. App.—Austin 1996, pet. ref'd); *Meshell v. State*, 841 S.W.2d 895, 896 (Tex. App.—Corpus Christi 1992, no pet.); *Colquitt v. State*, 650 S.W.2d 128, 128 (Tex. App.—Houston [14th Dist.] 1983, no pet.). But these cases do not address whether evidence establishing credit card abuse can (or cannot) also establish theft. Instead, they address whether a prior conviction under the credit card abuse statute is the equivalent of a prior conviction under the theft statute when determining whether a subsequent conviction is subject to enhanced punishment. *Watson*, 923 S.W.2d at 834; *Meshell*, 841 S.W.2d at 896; *Colquitt*, 650 S.W.2d at 128–29. They hold that it is not, since enhancement under the circumstances of those cases depends on whether the defendant has been previously convicted under a specific statute, not whether the defendant has previously engaged in specific conduct. *Watson*, 923 S.W.2d at 834; *Meshell*, 841

S.W.2d at 896; *Colquitt*, 650 S.W.2d at 129. The cases cited by Mitchell are therefore inapposite. They do not support his argument that the evidence of his unauthorized use of the Company charge card is insufficient to show he committed the offense of theft.

Regardless whether Mitchell's conduct violated the more specific statute for credit card abuse, the State had discretion to charge and prosecute him under the more general statute for theft in this case. *See Alejos v. State*, 555 S.W.2d 444, 451 (Tex. Crim. App. 1977) (even though State could have prosecuted defendant for either "evading arrest" or "fleeing or attempting to elude a police office," State "properly exercised its option" to prosecute defendant under former statute); *Garcia*, 669 S.W.2d at 172 ("[T]he special statute of credit card abuse does not control over the general theft statute in this case").

As a Company driver, Mitchell had a right to possess and, to a limited extent, use the Company charge card for certain work-related purchases. But once Mitchell decided to use the charge card for his own benefit, rather than the benefit of the Company, his control over the charge card (and the money it represented) was no longer consensual and he committed theft.

Viewing all the evidence in the light most favorable to the verdict, a rational trier of fact could have found Mitchell committed theft of "money" from the

Company by means of a company issued charge card. We overrule Mitchell's first issue.

## C. Intent to deprive

In his second issue, Mitchell contends that there is legally insufficient evidence that he had the requisite "intent to deprive" the Company of money. TEX. PENAL CODE § 31.03(a). The requisite specific intent to commit theft is a fact issue for the jury, which can be inferred from the defendant's conduct, his remarks, and from the surrounding circumstances. *See Robertson v. State*, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993); *Ford v. State*, 152 S.W.3d 752, 756 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); *McCurdy v. State*, 550 S.W.3d 331, 337 (Tex. App.— Houston [14th Dist.] 2018, no pet.).

In determining whether there is legally sufficient evidence of Mitchell's intent, the following facts are undisputed:

- When he was hired, and as a condition to receiving his charge card, Mitchell signed and agreed to abide by the Employee Fuel Card Agreement. Under the agreement, Mitchell agreed to obtain pre-approval and submit receipts for all nonfuel business expenses charged to his Company charge card; he agreed that "under no circumstances" would he use his charge card to "make personal purchases"; and he acknowledged that using his Company charge card for "personal gain" could result in the "termination of [his] employment and criminal prosecution."

- Nevertheless, over the eight-month term of his employment, Mitchell charged over $15,000 in personal expenses to his Company charge card. Mitchell did not obtain pre-approval or submit a single receipt for any of these charges. Most of the charges were made when Mitchell was off duty at a service station near his residence but far from the locations to which he

9

made deliveries. Many of the charges were made in round $50 increments with no sales tax.

- During Mitchell's term of employment, the Company did an admittedly poor job of reconciling its drivers' charge card accounts. The Company did not reconcile Mitchell's charge card account until his eighth (and final) month of employment. By then, the amount of unauthorized personal charges was too large to deduct from Mitchell's pay.

From these undisputed facts, a rational factfinder could have found that Mitchell knew he had no authority to charge personal expenses to his Company charge card, but did so anyway, charging over $15,000 in personal expenses, perhaps believing (mistakenly) that the Company would never reconcile his account.

Mitchell nevertheless argues that the evidence is insufficient to prove intent because the Company never deducted (or attempted to deduct) the charges from his pay as permitted by the Employee Fuel Card Agreement. Because the Company had the right to deduct unauthorized charges from his pay, Mitchell argues that the State could not prove intent without showing that Mitchell "did not intend to allow for a deduction from his paycheck" for his unauthorized, nonfuel personal charges. And the only way to show he did not intend to allow the Company to deduct the unauthorized charges, Mitchell contends, was with evidence that the Company tried to make the deductions but Mitchell somehow preventing it from doing so. Because the State presented no such evidence, Mitchell concludes, there is legally insufficient evidence that Mitchell had the requisite intent.

10

The Company's failure to regularly reconcile driver charge card accounts during Mitchell's term of employment and decision not to deduct the unauthorized charges after they were discovered is not as probative as Mitchell claims. This evidence cuts both ways, and, viewed in the light most favorable to the verdict, actually supports a finding of intent. This is because it would permit a reasonable jury to find that Mitchell came to believe that the Company had not been reviewing his charges and would not do so in the future—giving him carte blanche to use the charge card for personal expenses.

Moreover, by the time the Company discovered that Mitchell had been making unauthorized charges for personal expenses, the amount was too large to deduct from Mitchell's pay. This supports a finding of intent because it shows that Mitchell could not have reasonably expected that all his unauthorized charges could be deducted from his pay. *See, e.g.*, *Beatty*, 2010 WL 2133870 at *7 (evidence showed defendant knew he was ultimately responsible for personal charges and that he charged large amount of personal expenses on company credit cards but did not pay balance).

Mitchell's failure to obtain pre-approval or submit a receipt for a single charge over an eight-month period is probative of intent, as is the pattern of unauthorized charges—made primarily at one location while Mitchell was off duty for nonbusiness purposes in similar even-numbered amounts. *See Riley v. State*,

11

312 S.W.3d 673, 678 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("[E]vidence of intent to commit theft through deception consists of the pattern or scheme established in each of the four transactions . . ."); *Merryman v. State*, 391 S.W.3d 261, 272 (Tex. App.—San Antonio 2012, pet. ref'd) (holding evidence sufficient to support contractor's conviction when it showed similar patterns of accepting customers' payments but failing to complete agreed-to projects).

Viewing the record in the light most favorable to the verdict, we hold that a rational juror could have found that Mitchell had the requisite intent to deprive the Company of money when he made unauthorized personal charges with his company issued charge card. Accordingly, we overrule Mitchell's second issue.

## Conclusion

We affirm.

Gordon Goodman
Justice

Panel consists of Justices Keyes, Goodman, and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).